are sufficient to survive the City's 12(b)(6) motion. Section 1981 does not necessarily require that the plaintiffs' ethnic characteristics be the source of the alleged discrimination. The only requirement is that the discrimination be in fact motivated by racial considerations. See <u>Alizadeh v Safeway Stores, Inc</u>, 802 F2d 111 (5th Cir 1986) (permitting a white female to claim discrimination due to her marriage to an Iranian male). Here, plaintiffs appear to allege that City Council President De La Fuente discriminated against Mi Pueblo and its owners for betraying their Latino roots. This prejudice led De La Fuente to saddle Mi Pueblo with bureaucratic red-tape he would not impose on a non-minority grocery store. See Doc #24 at 11 n7 ("Plaintiffs believe that the City and Council President De La Fuente would have little opposition if a Safeway, Whole Foods or Andronicos sought to occupy the former Albertsons location").

An alternative theory suggested by plaintiffs is that City Council President De La Fuente discriminated against Mi Pueblo for not being authentic compared to the "small mom-and-pop" Latino stores scattered throughout the City of Oakland. Some commentators term this phenomenon the "trap of cultural authenticity," which describes the tendency of certain minority cultural traits to become, in effect, canonized and for the authorities of that culture to demand its members to comply with these traits or face exclusion for being inauthentic. See Richard T Ford, <u>Racial Culture: A Critique</u>. As applied here, De La Fuente viewed Mi Pueblo as an inauthentic Latino store for operating like Wal-Mart, rather than conforming to the standard mold. Although this alternative theory may run afoul of Supreme Court instruction that section 1981

16